**D. Dale WILLIAMS, Director, Department of Finance of State of Utah, Plaintiff and Appellant,**

v.

**UNIVERSITY OF UTAH, Defendant and Respondent.**

No. 17000.

Supreme Court of Utah.

Feb. 27, 1981.

---

Robert B. Hansen and Leon A. Halgren, Salt Lake City, for plaintiff and appellant.

Brinton R. Burbidge, Salt Lake City, for defendant and respondent.

HALL, Justice:

Plaintiff appeals a declaratory judgment [1] which summarily upheld defendant's employee benefit plan wherein sick pay is exempted from the definition of "wages" for purposes of calculating F.I.C.A.[2] contributions.

Employees of the various states (and political subdivisions thereof) are expressly excluded from coverage under the Federal Insurance Contributions Act (hereinafter "Act").[3] The states are permitted, however, to contract with the federal government to extend the insurance system to state employees.[4] On March 7, 1951, pursuant to the provisions of U.C.A., 1953, 67–11–3, the State of Utah so contracted. Under the agreement, the benefits received and contributions paid for state employees are basically the same as for other employees covered by the Act.

The University of Utah (hereinafter "defendant") is a state entity which forwards to D. Dale Williams, State Director of Finance (hereinafter "plaintiff"), the required employer and employee F.I.C.A. contributions. Plaintiff has the responsibility of remitting said contributions to the Secretary of the Treasury of the United States.[5]

Defendant has established an employee fringe benefit program which includes sick leave. Full-time employees accumulate sick leave at a rate of one day for each month of continuous service to a maximum of 130

---

1. Filed pursuant to Rule 57, U.R.C.P.

2. Federal Insurance Contributions Act, commonly known as Social Security.

3. 26 U.S.C. § 3121(b)(7).

4. 42 U.S.C. § 418.

5. U.C.A., 1953, 67–11–3(a)(2).

days.[6] When an employee is unable to discharge the duties of his or her employment due to disability resulting from mental or physical injury, illness, or incapacity, the employee is paid sick leave benefits. These benefits are allowable only because of the personal illness of the individual employee and the defendant may require substantiation of all illnesses charged to sick leave. Compensation received pursuant to the sick leave plan is accounted for and identified as a separate item on the payroll check stub which is given to each employee in conjunction with his or her payroll check.

Defendant has always included these benefit payments in calculating F.I.C.A. contributions to be forwarded to plaintiff.[7] However, since January, 1978, defendant has identified the amount of contribution resulting from the inclusion of these benefits and has requested a refund of such amounts. In June, 1978, an opinion of the Utah Attorney General concluded that defendant's sick leave plan is statutorily authorized, and that benefits paid thereunder are not to be included in the compensation base for F.I.C.A. purposes.[8]

Plaintiff initiated this action to determine if defendant's sick leave plan constituted a constitutional expenditure of state funds and whether the money received pursuant to the sick leave plan was "wages" as defined in U.C.A., 1953, 67–11–2, for purposes of calculating F.I.C.A. contributions. Defendant moved for summary judgment. The lower court granted defendant's motion and ruled that:

1. The sick leave plan of the University of Utah is authorized by the provisions of Section 67–11–1 *et seq.* Utah Code Ann. (1953);

2. Since the implementation of the University of Utah sick leave plan, compensation received pursuant to the plan is not "wages" as that term is defined in Section 63–11–2 Utah Code Ann. (1953);

3. The compensation received by employees pursuant to the sick leave plan of the University of Utah should not be included in the compensation base on which the state contribution authorized by Section 67–11–3(3) Utah Code Ann. (1953) is calculated;

4. Providing compensation to employees of the University of Utah pursuant to the University's sick leave plan does not violate constitutional or statutory provisions of Utah state law.

In the case of *Baird v. State*,[9] we held that declaratory relief can be rendered only where there exists a real justiciable controversy between adverse parties. We referred extensively in that opinion to Anderson's treatise on Declaratory Judgments and specifically adopted the following language:

When it is ascertained that there is no jurisdiction in the court because of the absence of a justiciable controversy, then the court can go no further, and its immediate duty is to dismiss the action, and jurisdiction cannot be conferred by consent or any other act of the parties.

A Declaratory Judgment Statute cannot be so construed as to authorize the courts to deliver advisory opinions or pronounce judgments on abstract questions, but there must be the invariable justiciable controversy present in such cases.

The Declaratory Judgment Statute recognizes the constitutional limitations upon the courts to determine only cases and controversies.[10]

---

**6.** Certain part-time employees also accumulate sick leave on a pro rata basis.

**7.** In 1953, an opinion of the Utah Attorney General construed the sick leave plan of Salt Lake City. The opinion stated that sick pay under that plan was nothing more than a continuation of salary which was therefore subject to F.I.C.A. contributions.

**8.** The opinion relied, in part, on a letter of May 7, 1974, to defendant from the Internal Revenue Service stating its position that defendant's sick pay plan "qualifies for exclusion of the F.I.C.A. tax."

**9.** Utah, 574 P.2d 713 (1978).

**10.** Quoting 1 Anderson, Declaratory Judgments (2d Ed.) § 9, pp. 49–50.

In *Baird*, we also held that the question of justiciable controversy is of such importance as to require the court to raise it *sua sponte*, if the parties neglect or fail to do so.

In the instant case, plaintiff admits in his brief on appeal that "this action was brought, not because there is an actual controversy between the parties to this action, but because [it involves] a principle of law which has far reaching effects and needs final determination ...." Plaintiff concedes that there is no issue as to the fact that U.C.A., 1953, 67–11–2, as amended, expressly excludes sick pay from the definition of wages.[11] Plaintiff also concedes that it does not appear that said section is subject to constitutional challenge.[12] In the

absence of any justiciable controversy between adverse parties, the courts are without jurisdiction.

The declaratory judgment of the lower court is therefore vacated and set aside and the action is ordered dismissed. No costs awarded.

MAUGHAN, C. J., and STEWART, HOWE and OAKS, JJ., concur.

11. U.C.A., 1953, 67–11–2, provides, in pertinent part, as follows:

(a) The term "wages" means all remuneration for employment as defined herein, including the cash value of all remuneration paid in any medium other than cash, except that such term shall not include "sick pay" as that term is defined in this section and shall not include that part of such remuneration which, even if it were for "employment" within the meaning of the Federal Insurance Contributions Act, would not constitute "wages" within the meaning of that act;

(b) The term "sick pay" means payments made to employees on account of sickness or accident disability under a sick leave plan of the type outlined in Subsections 209(b) and 209(d) of the Social Security Act.

12. The only case plaintiff cites is *State of New Mexico v. Weinburger*, 517 F.2d 989 (10th Cir. 1975), which is admittedly distinguishable on its facts.